

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-24-00296-CV

**IN THE INTEREST OF S.Q.-M.B.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00202
Honorable Charles E. Montemayor, Judge Presiding[1]

Opinion by:     Beth Watkins, Justice

Sitting:        Beth Watkins, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: August 21, 2024

AFFIRMED

Appellant S.S.B. challenges the trial court's order terminating her parental rights to her

child, S.Q.-M.B. (born 2022).[2] She argues the evidence is legally and factually insufficient to

support the trial court's findings under Texas Family Code section 161.001(b)(1)(O) and (P) and

its finding that termination is in the best interest of S.Q.-M.B. We affirm the trial court's order.

### BACKGROUND

In June of 2022, shortly after S.Q.-M.B.'s birth, the Texas Department of Family and

Protective Services received a referral due to S.S.B.'s drug use. In August of 2022, the Department

---

[1] The Honorable Charles E. Montemayor signed the April 18, 2024 written order of termination. However, the Honorable Kimberly Burley presided over the February 22, 2024 trial and orally rendered the judgment of termination.
[2] To protect the privacy of the minor child, we use initials to refer to the child and his biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

initiated a family-based safety services plan in an attempt to avoid removing the child from S.S.B.'s care. But she admitted to using methamphetamines multiple times during the family-based safety services plan, and in February of 2023, the Department removed S.Q.-M.B., obtained temporary managing conservatorship over him, placed him in foster care, and filed a petition to terminate S.S.B.'s parental rights. The Department later filed an amended petition to terminate the rights of both S.S.B. and S.Q.-M.B.'s alleged father, A.T.G.[3]

The Department created a family service plan requiring S.S.B. to, inter alia, "demonstrate sobriety for at least six months"; submit to random drug tests; "actively participate [in] and complete a substance abuse assessment" and "follow all recommendations made by the provider," including any recommendations for outpatient or inpatient drug treatment; and "actively participate in and complete" domestic violence classes and "demonstrate an understanding and utilization of the skills acquired during her participation in the program." The Department explained to S.S.B. that failure to comply with the plan could lead to termination, and she signed the plan. The Department ultimately pursued termination of S.S.B.'s parental rights.

Twelve months after removal, the trial court held a one-day bench trial at which S.S.B. appeared. The trial court heard testimony from two witnesses: Department caseworker Samantha Casun and S.S.B. On April 18, 2024, the court signed an order terminating S.S.B.'s parental rights pursuant to Texas Family Code section 161.001(b)(1)(O) and (P) and its finding that termination of S.S.B.'s parental rights was in the best interest of S.Q.-M.B. S.S.B. appealed.

---

[3] The Department's petition and the trial court's order of termination identify S.Q.-M.B.'s alleged father's initials as A.T.G., but the reporter's record identifies his initials as E.T.G. The record appears to show that A.T.G. and E.T.G. are the same person.

**ANALYSIS**

*Applicable Law and Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate S.S.B.'s parental rights and that termination was in the best interest of S.Q.-M.B. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. A factual sufficiency review requires us to consider the entire record to determine whether the evidence that is contrary to a finding would prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true. *See id.* The factfinder is the sole judge of the weight and credibility of the evidence.

*Id.* at 346. This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

### Statutory Termination Grounds

*Applicable Law*

In her first and second issues, S.S.B. challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings under section 161.001(b)(1)(O) and (P) of the Texas Family Code. When, as here, the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.).

Subsection (P) provides that a trial court may terminate the parent-child relationship if it finds by clear and convincing evidence that the parent "used a controlled substance . . . in a manner that endangered the health or safety of the child, and: (i) failed to complete a court-ordered substance abuse treatment program; or (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance." TEX. FAM. CODE ANN. § 161.001(b)(1)(P). S.S.B. does not dispute that the evidence showed she used a controlled substance and failed to complete a court-ordered substance abuse treatment program. *See id.* However, she argues the evidence did not support a finding that she used a controlled substance in a manner that endangered S.Q.-M.B.'s health or safety. *See id.*

*Application*

The Texas Supreme Court recently held the word "endangered," as used in subsection (P), does not require a showing that a parent's drug use caused actual injury to a child. *In re R.R.A.*,

687 S.W.3d 269, 277 (Tex. 2024). "Instead, endangerment encompasses a larger array of conduct that 'expose[s a child] to loss or injury' or 'jeopardize[s]' the child." *Id.* (alterations in original, quoting *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Evidence of an endangering course of conduct "can be developed by circumstances arising from and surrounding a parent's behavior," but "[s]uch risks must be more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Id.* (internal quotation marks omitted). "A parent's pattern of illegal use of a controlled substance like methamphetamine supports a finding of endangerment under (P) when the evidence shows it adversely affected the parent's ability to parent, presenting a substantial risk of harm to the child's health and safety." *Id.* at 281.

Here, Casun testified that S.S.B. admitted she used methamphetamines while she was pregnant with S.Q.-M.B., and S.S.B. did not dispute this testimony. Multiple Texas courts, including this one, have held that "drug use during pregnancy constitutes conduct that endangers a child." *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *4 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.); *see also In re J.S.*, 675 S.W.3d 120, 129 (Tex. App.—Dallas 2023, no pet.); *In re J.A.V.*, 632 S.W.3d 121, 131 (Tex. App.—El Paso 2021, no pet.); *L.B. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-09-00429-CV, 2010 WL 1404608, at *5 (Tex. App.—Austin Apr. 9, 2010, no pet.) (mem. op.).[4] The trial court could have reasonably found the evidence of S.S.B.'s drug use during pregnancy supported a finding that she used a controlled substance in a manner that endangered S.Q.-M.B.'s health or safety. *See, e.g., In re M.B.*, No. 02-

---

[4] *A.B.R.*, *J.S.*, *J.A.V.*, and *L.B.* analyzed the meaning of "endanger" and "endangers" as those words are used in subsections (D) and (E). *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E); *In re A.B.R.*, 2020 WL 1159043, at *4; *In re J.S.*, 675 S.W.3d at 129; *In re J.A.V.*, 632 S.W.3d at 131; *L.B.*, 2010 WL 1404608, at *5. While subsections (D) and (E) are not at issue here, the Texas Supreme Court held in *R.R.A.* that "endangered" in subsection (P) has the same meaning. *In re R.R.A.*, 687 S.W.3d at 276–78.

15-00128-CV, 2015 WL 4380868, at \*13 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op.).

S.S.B. testified that she also used methamphetamines while S.Q.-M.B. was still in her care during the period of family-based safety services. *See In re R.R.A.*, 687 S.W.3d at 279 (considering evidence parent "used felony-level drugs" when he was his children's primary caregiver). Furthermore, Casun testified that after S.Q.-M.B.'s removal, S.S.B. was unsuccessfully discharged from outpatient drug treatment and was instead referred to inpatient treatment because "[s]he had continued to admit to use. And we had concerning drug tests." S.S.B. was then unsuccessfully discharged from the inpatient program after a relapse in December of 2023. The trial court could have reasonably found these discharges were significant because S.S.B. knew successful completion of drug treatment was required for reunification. *See In re J.A.R.*, __ S.W.3d __, No. 14-24-00062-CV, 2024 WL 3493472, at \*6 (Tex. App.—Houston July 22, 2024, no pet. h.) (holding factfinder could have determined parents' "continued drug use and failure to participate in drug counseling constituted a course of conduct that endangered" child); *In re G.T.*, No. 04-23-00821-CV, 2024 WL 463357, at \*2–3 (Tex. App.—San Antonio Feb. 7, 2024, no pet.) (mem. op.) (concluding parent's positive drug test supported termination under subsection (P) even though child was in foster home at the relevant time). For these additional reasons, the trial court could have reasonably found S.S.B. used a controlled substance in a manner that endangered S.Q.-M.B.'s health or safety. *See* TEX. FAM. CODE § 161.001(b)(1)(P); *In re G.T.*, 2024 WL 463357, at \*2.

We overrule S.S.B.'s second issue. Based on our disposition of this issue, we need not address her first issue, which challenges the trial court's finding under subsection (O). TEX. R. APP. P. 47.1; *In re B.N.D.*, No. 04-21-00286-CV, 2021 WL 6127883, at \*5 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) (mem. op.).

### Best Interest

*Applicable Law*

In her third issue, S.S.B. challenges the legal and factual sufficiency of the trial court's finding that termination of her parental rights was in S.Q.-M.B.'s best interest. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[5] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[6] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In analyzing these factors, the court focuses on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

---

[5] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[6] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Furthermore, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, we presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

*Application*

"A parent's illegal drug use supports a finding that termination of the parent-child relationship is in the best interest of the child." *In re A.M.O.*, No. 04-17-00798-CV, 2018 WL 2222207, at *2 (Tex. App.—San Antonio, May 16, 2018, no pet.) (mem. op); TEX. FAM. CODE § 263.307(b)(8) (trial court may consider history of substance abuse by family/others with access to home in best-interest determination). This is because "drug use can destabilize the home and expose children to physical and emotional harm if not resolved." *In re A.L.S.*, 660 S.W.3d 257, 275–76 (Tex. App.—San Antonio 2022, pet. denied); *see also In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's drug use supports finding that termination is in best interest of child). Illegal drug use is relevant to multiple best interest considerations, both statutory and *Holley* factors, including a child's emotional and physical needs now and in the future, a parent's parental abilities, stability of the home, and a parent's acts or

omissions pertinent to determining whether the parent-child relationship is improper. *See Holley*, 544 S.W.2d at 371–72.

As explained above, S.S.B. did not dispute that she used methamphetamines while she was pregnant with S.Q.-M.B., during the family-based safety services portion of this case, and after the Department removed S.Q.-M.B. Additionally, Casun testified the Department received a "concerning" drug test result from S.S.B. on January 23, 2024 and that S.S.B. admitted to using methamphetamines on January 30, 2024, less than one month before trial. Casun told the trial court, "We have gone back and forth trying to get her engaged in her services, to test regularly as requested, and she continues to use. That's our major concern." Casun testified that based on S.S.B.'s struggles with substance abuse, she believed termination was in S.Q.-M.B.'s best interest. *See* TEX. FAM. CODE § 263.307(b)(8).

S.S.B. herself testified that she most recently used methamphetamines on January 31, 2024 and that she had been clean for twenty-two days at the time of trial. She explained she went to inpatient drug treatment because she knew she "needed the help," but that she subsequently relapsed due to trauma she had experienced. She added that shortly before trial, she began engaging in intensive therapy four days a week to address her trauma, and she believed the therapy was helping her "to be able to accept and to build [herself] and heal [herself]." She also testified that she planned to return to Casa Mia, a sober living facility where she had previously lived, for additional support with her sobriety. We note, however, that "evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *See In re J.O.A.*, 283 S.W.3d at 346. Additionally, because S.S.B.'s service plan explicitly required her to "demonstrate sobriety for at least six months before" the Department would consider reunifying her with S.Q.-M.B., the trial court could have reasonably inferred that her failure to meet that goal was probative of her willingness and ability

to seek out and accept counseling services and to effect positive changes in a reasonable period of time. Tex. Fam. Code § 263.307(b)(10), (11).

Like illegal drug use, failure to submit to drug testing—through which the trial court could infer continued drug abuse—is relevant to multiple best-interest considerations. *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op). Casun testified that S.S.B. failed to submit to a required drug test on February 7, 2024, approximately two weeks before trial. The trial court could have reasonably inferred that S.S.B. failed to submit to the February 7 test because she was still using illegal drugs. *See, e.g.*, *In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *7 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.); *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The trial court could also consider evidence of abusive or assaultive conduct by the child's family or others who have access to the home. *See* Tex. Fam. Code § 263.307(b)(7). Here, there was no evidence that S.S.B. ever assaulted S.Q.-M.B. or anyone else. The evidence showed, however, that she reported domestic violence in her relationships with both S.Q.-M.B.'s father and with a second paramour, a man named Victor. Although S.S.B. testified Victor "was never physically violent with" her, she also testified that "he made [her] home unsafe" by breaking her windows and stalking her. *See id.* She further testified that he knew where she lived. While the evidence showed S.S.B. completed her required domestic violence classes in July of 2023, Casun testified that "the most recent" violent incident with Victor occurred after that point, in December of 2023. Casun therefore did not believe S.S.B. was using the skills she learned or should have learned in the classes. *See* Tex. Fam. Code § 263.307(b)(11). Based on this testimony, the trial court could have reasonably found that S.S.B. had not demonstrated an ability to provide S.Q.-M.B. with "a safe physical home environment." *See id.* § 263.307(b)(12)(D).

A trial court conducting a best-interest analysis may also consider the stability of a parent's home. *See Holley*, 544 S.W.2d at 371–72. The evidence showed S.S.B. lived in an apartment she obtained through the San Antonio Housing Authority, and Casun visited that apartment during this case. Casun did not identify any problems with the cleanliness or size of the home. She testified, however, that she did not believe S.S.B.'s home was appropriate because "there's been several individuals living in the home with [S.S.B.], homeless individuals." Casun testified that S.S.B. told her those individuals "were friends of hers that needed a place to stay" and that "she had been trying to get them to leave, but she had trouble getting them to leave." S.S.B., in contrast, testified that she had stable housing and the individuals in question no longer lived with her. The trial court had the sole authority to resolve any conflict in the evidence regarding the stability and appropriateness of S.S.B.'s home. *See In re J.O.A.*, 283 S.W.3d at 346.

S.Q.-M.B. was approximately twenty months old at the time of trial. The Department removed him from S.S.B.'s care when he was seven months old, and at the time of trial, he had been with the same foster family for four months. *See* TEX. FAM. CODE § 263.307(b)(1), (2) (trial court may consider child's age and "the frequency and nature of out-of-home placements"). Casun testified that she believed S.Q.-M.B. was bonded to his foster family because "he goes to them with open arms, loves on them, hugs on them, definitely seeks comfort from them." She also testified that the foster family wanted to adopt him.[7] TEX. FAM. CODE § 263.307(a).

It was clear from S.S.B.'s testimony that she loved S.Q.-M.B. very much. She testified that she had an "[a]mazing" visit with him on the day of trial in which "he hugged [her] and he rubbed [her] face and said, Mom." S.S.B. testified that she knew she had "been given so many chances," but she explained that "dealing with [her] trauma had opened up [her] eyes to a lot." She asked the

---

[7] While S.Q.-M.B.'s foster parents did not testify at trial, the trial court recognized on the record that they were present during the proceedings.

trial court for more time to continue to work her services and demonstrate her sobriety, stating that she was willing to do "drug tests seven days out of the week" if necessary.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of S.S.B.'s parental rights was in S.Q.-M.B.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold that legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule S.S.B.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice